**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**LOUISE P. BATSTONE, *et al.*** *
*
**v.** * **Civil Action No. CCB-20-1012**
*
**MERIDIAN SECURITY** *
**INSURANCE COMPANY** *
*****

**MEMORANDUM**

This action concerns the scope of home insurance coverage which the defendant, Meridian Security Insurance Company ("Meridian"), is obligated to provide to the plaintiffs, Louise P. Batstone and Griffith R.D. Batstone ("the Batstones"). Before the court are cross-motions for partial summary judgment. The Batstones seek judgment on their breach of contract and declaratory judgment claims (ECF 4) while Meridian seeks judgment on its counterclaim for declaratory judgment (ECF 16). The matter has been fully briefed[1] and no oral argument is necessary. *See* Local Rule 105(6) (D. Md. 2018). For the reasons discussed herein, the court will grant the Batstones' motion for summary judgment and deny Meridian's cross-motion for summary judgment.

**BACKGROUND**

When the Batstones purchased their property at 1003 Covington Way in Annapolis, Maryland, on July 31, 2018, they unwittingly inherited an ongoing dispute. (ECF 4-3, Louise Batstone Decl. ¶¶ 2, 3). Their new neighbors, William Atkins and Nancy Wheeler of 1002 Covington Way, had been engaged in what Louise Batstone later called a "long and contentious

[1] The Batstones have also filed a motion for leave to file a surreply (ECF 23), which Meridian has opposed (ECF 26). The motion, which seeks to address Meridian's citation to an insurance law treatise, is denied. *See* Local Rule 105(2)(a) (D. Md. 2018); *see also Dones v. Brennan*, 147 F. Supp. 3d 364, 372–73 (D. Md. 2015).

dispute" with Mark Five Development and Mark Five Construction, the developer and builder of 1003 Covington Way. (*Id.* ¶ 3). But the Batstones were unaware of this dispute until four days after they purchased their home, when their neighbors informed them that the grading and construction performed by the builder had caused stormwater runoff to damage their property. (*Id.*).

After the Batstones allegedly reneged on their promise to undertake repairs, the neighbors filed suit against the developer, the builder, and the Batstones in the Circuit Court for Anne Arundel County, Maryland in February 2019; the operative complaint in that underlying litigation is now the second amended complaint. (ECF 4-3, Batstone Decl., ¶ 4; *see also* ECF 4-5, Atkins Second Am. Compl. ("Atkins Complaint")). The Atkins Complaint asserts three counts: (1) negligent construction against the builder and developer; (2) trespass against the Batstones; and (3) nuisance against the Batstones. (*See* ECF 4-5, Atkins Compl.). It alleges, in relevant part, that the neighbors informed the Batstones about the runoff immediately after they purchased the property, (*id.* ¶ 15), that they refused to make any modifications to remedy the issue, (*id.* ¶¶ 16, 18, 22), that the continued flow of water and sediment from the Batstones' property is a "continued trespass" and "constitutes an intentional interference" with their possessory interest, (*id.* ¶¶ 35, 40), and that the excessive water accumulating on the neighbors' property is "intentional," (*id.* ¶¶ 36, 41).

When the Batstones purchased their home, they took out a home insurance policy with Meridian. (ECF 4-3, Batstone Decl., ¶ 2; *see also* ECF 4-2, Homeowner Policy). The Batstones believe that this policy covers the type of property damage at issue and requires Meridian to defend them in the litigation with their neighbors. In support, they cite the following provision, which the court reproduces in full:

SECTION II – LIABILITY COVERAGES
   A. Coverage E – Personal Liability
      If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
      1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and
      2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

(ECF 4-2, Homeowner Policy at 17; *see also* ECF 11-1 at 55). Yet that policy is also subject to several exclusions, including the following provision:

SECTION III – EXCLUSIONS
   E. Coverage E – Personal Liability and Coverage
      1. Expected or Intended Injury
         "Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":
         a. Is of a different kind, quality or degree than initially expected or intended; or
         b. Is sustained by a different person, entity, or property than initially expected or intended.

(ECF 4-2, Homeowner Policy at 19; *see also* ECF 11-1 at 57). The policy defines "property damage" as "physical injury to, destruction of, or loss of use of tangible property" and it defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in 'bodily injury' or 'property damage.'" (ECF 4-2, Homeowner Policy at 2).

Pursuant to the home insurance policy, the Batstones contacted Meridian to make a demand for defense and indemnity in relation to the lawsuit. (ECF 4-3, Batstone Decl. ¶ 5). On May 31, 2019, Meridian appointed counsel to represent the Batstones, noting that "as long as there is

coverage for the allegations in the complaint, we will provide a legal defense for you, . . . and defend you in this lawsuit." (ECF 4-7, Letter from State Auto Ins. Co. at 1). Later, on July 23, 2019, Meridian informed the Batstones that "after completing coverage determination, it ha[d] no duty to defend" the Batstones and was "withdrawing from [their] defense." (ECF 4-8, Letter from Goldberg Segalla at 1, 2). Meridian explained that its policy covered property damage caused only by an "occurrence," which is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 2). Because the Atkins Complaint alleged that their failure to stop the runoff from damaging their neighbors' property was intentional, Meridian maintained that the damage caused thereby could not constitute an accident. (*Id.*).

After Meridian's counsel withdrew, the Batstones financed their own legal defense, incurring significant legal fees and other costs. (ECF 4-3, Batstone Decl. ¶ 7). They instituted this action on April 20, 2020, raising a breach of contract claim to secure a defense, indemnity, and compensation for their legal fees and seeking a declaratory judgment that Meridian is obligated to provide coverage and indemnity and assume the defense as the underlying litigation proceeds in Circuit Court. (ECF 1, Compl.). Meridian has filed a counterclaim seeking a declaratory judgment to the opposite effect. (ECF 11). The Batstones moved for partial summary judgment as to the duty to defend (ECF 4) and Meridian filed a corresponding cross-motion for partial summary judgment (ECF 16). The cross-motions are fully briefed and the Batstones have also filed a motion for leave to file a surreply. (ECF 23). The matter is now ripe for resolution.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## DISCUSSION

### I. Breach of Contract Claim

In count one of their complaint, the Batstones allege Meridian breached their contract by failing to provide counsel for them in the Atkins litigation. To prevail on a claim for breach of contract under Maryland law, a plaintiff must prove the existence of a contractual obligation owed by the defendant to the plaintiff and that the defendant breached that obligation. *Taylor v. NationsBank N.A.*, 365 Md. 166, 175 (2001). In Maryland, insurance policies are "construed like other contracts." *Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 224 (1997). When deciding the issue of coverage under an insurance policy, courts look to the terms of the insurance contract

itself and "accord the words [in the policy] their usual, ordinary, and accepted meaning" unless there is an indication the parties intended to use such words in a technical sense. *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 355 Md. 566, 581 (1999) (internal quotation marks omitted). If the contract's language is plain and unambiguous, the court will determine the meaning of the contract's terms as a matter of law. *Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*, 390 Md. 449, 459 (2006). A term is ambiguous if a reasonably prudent person would find it susceptible to more than one meaning. *See id*.

Under Maryland law, an insurer has a duty to defend its insured "'for all claims that are potentially covered under the policy.'" *Unwired Sols., Inc. v. Ohio Sec. Ins. Co.*, 247 F. Supp. 3d 705, 708 (D. Md. 2017) (quoting *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 15 (2004)). Maryland courts engage in a two-part inquiry to determine whether an insurer has a duty to defend, determining first what the terms of the policy are and second whether the allegations in the lawsuit state a claim that would bring the claim within the policy's coverage or exclude it. *See Clendenin Bros.*, 390 Md. at 458 (citing *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 193 (1981)). Courts look to "the policy, the relevant complaint, and appropriate extrinsic evidence" in determining whether a duty to defend is triggered. *Chantel Assocs. v. Mt. Vernon Fire Ins. Co.*, 338 Md. 131, 142 (1995); *see also Reames v. State Farm Fire & Cas. Ins.*, 111 Md. App. 546, 560 (1996) (analysis concerning an insurer's duty to defend on the ground that allegations in a tort action potentially bring the tort claim within policy coverage is governed "solely by evaluating the causes of action actually alleged"). Courts are not to evaluate any "[u]nasserted causes of action that could potentially have been supported by the factual allegations" because they "do not demonstrate a reasonable potential that the issue triggering coverage will be generated at trial." *Reames*, 111 Md. App. at 561 (internal quotation marks omitted). Any doubt about whether there

is potentially coverage under a policy, however, is to be resolved in favor of the insured. *See Clendenin Bros.*, 390 Md. at 460.

First then, in this case, the home insurance policy provides that Meridian has a duty to defend when (1) a suit is brought (2) against an insured (3) for damages (4) because of "property damage" (5) caused by an "occurrence" (6) to which coverage applies. (ECF 4-2, Homeowner Policy at 17). The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in 'bodily injury' or 'property damage.'" (*Id.* at 2). The term "accident" is not defined in the policy, but Maryland courts have held that an accident occurs "when a negligent act causes damage that is unforeseen or unexpected by the insured." *Sheets v. Brethren Mut. Ins. Co.,* 342 Md. 634, 652 (1996). Additionally, a voluntary or intentional act may constitute an "accident" when the insured is the victim of an intentional tort and the events leading to the damage were "unforeseen, unusual, and unexpected" from the perspective of the insured. *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 315 (2000) (citing *Sheets*, 342 Md. at 652). But when the insured is the tortfeasor rather than the victim of the tort, an intentional tort cannot be considered an accident. *See State Farm Fire & Cas. Co. v. Huguely*, 432 F. Supp. 3d 587, 595 (D. Md. 2020).

Next, the court must determine whether the allegations in the complaint bring the claim within coverage of the policy. The Atkins Complaint alleges two counts against the Batstones. Count two, for trespass, states that "[t]he continuing excessive flow of swales of water . . . upon the Plaintiffs' property from the Batstones' property is a continued trespass, and constitutes an intentional interference[.]" (ECF 4-5, Atkins Compl. ¶ 35). And count three, for nuisance, alleges that the same "excessive flow of swales of water . . . is a continued nuisance, and constitutes an intentional interference[.]" (*Id.* ¶ 40).

In light of the allegations of "intentional" trespass and nuisance, Meridian argues that the property damage at issue is not covered by the terms of the policy because intentional conduct cannot constitute an "accident" or "occurrence." It is true that the Atkins Complaint repeatedly uses the word "intentional" to describe the Batstones' conduct of omitting to make repairs to stem the flow of stormwater onto their property.[2] Yet this court is tasked not with searching for the mere presence of the word intentional in the underlying action, but rather with "evaluating the causes of action actually alleged[.]" *Reames*, 111 Md. App. at 560.

For example, in *State Farm Fire and Casualty Company v. Huguely*, another judge of this court considered a case in which the insured was an alleged tortfeasor rather than the alleged victim of a tort. 432 F. Supp. 3d at 595. In that case, State Farm sought a declaratory judgment absolving it of the duty to defend Huguely, who was facing a claim for assault and battery in state court. *Id.* at 589, 593. Huguely's policy imposed on State Farm a duty to defend where a claim was made for damages because of bodily injury caused by an "occurrence," which was defined as an "accident." *Id.* Reasoning that assault and battery is an intentional tort and that an intentional tort "'hardly can be called an accident,'" the court held that there could be no accident in a claim for assault and battery and that therefore there was no duty to defend. *Id*. at 594–95 (quoting *Cole*, 359 Md. at 307).

In this case, the Batstones, as in *Huguely*, stand in the position of the alleged tortfeasor rather than the alleged tort victim. But the Batstones face a claim not for assault and battery but for trespass and nuisance. In Maryland, trespass is a tort involving "an intentional or negligent

---

[2] It is worth noting that the Atkins Complaint does not allege that the Batstones intended to create the condition causing the nuisance and trespass, as that condition preexisted the Batstones' ownership of the property. Rather, the allegation is that the Batstones failed to fix the problem after it was brought to their attention.

intrusion[.]" *Royal Inv. Grp., LLC v. Wang*, 183 Md. App. 406, 444 (2008) (internal quotation marks omitted). To state a claim for trespass, a plaintiff must allege: (1) an interference with a possessory interest in his property; (2) through the defendant's physical act or force against that property; (3) which was executed without his consent. *Mitchell v. Balt. Sun Co.*, 164 Md. App. 497, 508 (2005). And to prove a nuisance claim, a plaintiff must show "an unreasonable and substantial interference with his or her use and enjoyment of his or her property such that the injury is of such a character as to diminish materially the value of the property as a dwelling . . . and seriously interfere with the ordinary comfort and enjoyment of it." *Exxon Mobil Corp. v. Albright*, 433 Md. 303, 409 (2013) (internal quotation marks omitted).

In sum, neither trespass nor nuisance claims under Maryland law require proof of tortious intent; a trespass claim may be proved by showing negligence and nuisance is a strict liability tort. Meridian relies extensively on *Reames*, 111 Md. App. 546, for the proposition that this court may not look to any unasserted causes of action, but rather is bound to accept the Atkins Complaint as it is pled. But it is for precisely that reason that this court will grant judgment in favor of the Batstones, as they do not rely on any unasserted causes of action to identify a duty to defend but rather on the two causes of action actually raised against them. Thus, there is a "reasonable potential"—despite the desire of Atkins and Wheeler to prove intent—that "the issue triggering coverage will be generated at trial." *Id.* at 561 (internal quotation marks omitted); *cf. Minnesota Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout & Kraus, LLP*, 472 F. App'x 219, 225 (4th Cir. 2012) (duty to defend triggered by trespass allegations where, under Virginia law, allegations of willful trespass could also support claim of unintentional trespass).[3] And to the extent there is some

[3] Unpublished opinions are cited for the soundness of their reasoning and not for any precedential value.

doubt whether the allegations of the complaint state a cause of action within the policy's coverage, *Cochran* instructs that such ambiguities are to be resolved in the insured's favor. 337 Md. at 107. As a result, there is a potentiality of coverage under the policy triggering Meridian's duty to defend.[4] The court will therefore grant the Batstones' motion for summary judgment on the breach of contract claim as to Meridian's duty to defend.

## II. Declaratory Judgment

In count two of their complaint, the Batstones seek a declaratory judgment stating that Meridian has a duty to defend them in the ongoing Atkins litigation. The Federal Declaratory Judgment Act provides federal district courts power "[i]n a case of actual controversy" to "declare the rights and other legal relations of any interested party seeking such a declaration, whether or not relief is or could be sought." 28 U.S.C. § 2201(a). "This power has consistently been considered discretionary." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996). A declaratory judgment action is appropriate when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality[.]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted). One of the purposes of the act is to allow a party in an uncertain position to "gain relief from the insecurity caused by a potential suit waiting in the wings." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998). For the reasons articulated above with respect to the breach of contract claim, the court finds that there is an actual controversy over the scope of Meridian's duty to defend the Batstones and that the Batstones are entitled to a declaratory judgment clarifying Meridian's duty to defend. The court will accordingly grant the Batstones' motion for partial summary judgment as to count

[4] Meridian relies on the same arguments to explain why, even if the property damage alleged by Atkins and Wheeler could be an accident, the policy nevertheless excludes expected or intended injuries. Those arguments fail for the same reasons explained herein.

two of their complaint insofar as it relates to Meridian's duty to defend, and the court will deny Meridian's cross-motion for summary judgment.

**CONCLUSION**

For the reasons described herein, the court will grant the Batstones' motion for partial summary judgment and will deny Meridian's cross-motion for summary judgment. A separate order follows.

3/30/2021
Date

/s/
Catherine C. Blake
United States District Judge